# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSES CLARK CDCR #F-99760, <br><br> Plaintiff, <br><br> vs. <br><br> LARRY SMALL; R. MADDEN, <br><br> Defendants. | Civil No.   09cv1484 L (JMA) <br><br> **ORDER:** <br><br> **(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6); and** <br><br> **(2) DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S REPLY TO OPPOSITION** <br><br> **[Doc. Nos. 18, 26]** |

In this prisoner civil rights case, Moses Clark ("Plaintiff"), is proceeding in pro se and *in forma pauperis* ("IFP") pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a). Defendants Small and Madden have filed a Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to FED.R.CIV.P. 12(b)(6) [Doc. No. 18]. Plaintiff has filed an Opposition to both Motions to which Defendants have filed a Reply. Because Defendants' Reply was filed one day late, Plaintiff has filed a "Motion to Strike Defendant's Reply" [Doc. No. 26].

## I.     Factual Background

Plaintiff was incarcerated at Calipatria State Prison ("CAL") in 2008. (*See* FAC at 6.) On September 16, 2008, a race riot occurred on Facility "C" between the African American and Caucasian inmates. (*Id.* at 7-8.) Plaintiff, a Muslim, practices his faith during Ramadan every year. (*Id.* at 6.) Due to the race riot, the prison was placed on lockdown status from September 25, 2008 to October 2, 2008 which disrupted Plaintiff's ability to practice his faith during Ramadan. (*Id.*) Plaintiff claims that Defendants interfered with his religious practice that requires him to "break his spiritual fast" with other Muslims. (*Id.* at 8.)

## II.    Plaintiff's Motion to Strike Defendants' Reply

Plaintiff has filed a "Motion to Strike Defendants' Reply to Opposition to Motion to Dismiss." [Doc. No. 18]. Plaintiff claims that this Reply was untimely by four days. While the Reply is untimely by one day, its untimeliness is not prejudicial to Plaintiff. Thus, the Court **DENIES** Plaintiff's Motion.

## III.   Defendants' Motion to Dismiss Plaintiff's Complaint

Defendants Small and Madden seek dismissal of Plaintiff's First Amended Complaint on the grounds that: (1) Plaintiff's allegations do not state a religious claim under the First Amendment or the Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA"); (2) Plaintiff has failed to state a Fourteenth Amendment Equal Protection Claim; (3) Plaintiff has failed to state a Fourteenth Amendment Due Process Claim; (4) Plaintiff's claim for monetary damages against all the Defendants in their official capacities are barred by the Eleventh Amendment; and (5) Defendants are entitled to qualified immunity.

### A.    FED.R.CIV.P. 12(b)(6) Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement

need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009) .

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972). Thus, where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

### B.     Eleventh Amendment Immunity

Defendants seek dismissal of Plaintiff's damages claims to the extent they are based on acts taken in their official capacities. While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, *Will v. Michigan*, 491 U.S. 58, 66 (1989), it does not bar damage actions against state officials in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992). When a state actor is alleged to have violated both federal and state law and is sued for damages under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. *Ashker v. California Department of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997). Here, Plaintiff clearly indicates an intent to sue Defendants in both their individual and official capacities. (*See* FAC at 5-6.) Thus, the Court **GRANTS** all Defendants' Motion to Dismiss on Eleventh Amendment grounds, with prejudice, only to the extent that Plaintiff seeks monetary damages against them in their official capacities.

/ / /

### C.     First Amendment and RLUIPA claims

Defendants purportedly seek dismissal of Plaintiff's First Amendment claim, as well as Plaintiff's claim brought pursuant to RLUIPA.[1] Defendants contend that they are entitled to dismissal of Plaintiff's claims that his religious beliefs were substantially burdened in violation of RLUIPA.

Specifically, RLUIPA provides:

> No government shall impose a *substantial burden on the religious exercise* of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – [¶] (1) is in furtherance of a *compelling governmental interest*; and [¶] (2) is the *least restrictive means* of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a) (emphasis added). *See also San Jose Christian College v. Morgan Hill*, 360 F.3d 1024, 1033-34 (9th Cir. 2004).

RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *San Jose Christian College*, 360 F.3d at 1034. *See also Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003) (noting that "[t]his definition reveals Congress's intent to expand the concept of religious exercise contemplated both in decisions discussing the precursory RFRA [. . . .] and in traditional First Amendment jurisprudence."), *cert. denied,* 124 S.Ct. 2816 (2004). The Ninth Circuit has had that "RLUIPA claims need only satisfy the ordinary requirements of notice pleading." *Alvarez v. Hill*, 518 F.3d 1152, 1159 (9th Cir. 2008) (explaining that "[u]nder this pleading standard, it is sufficient that the complaint, alone or supplemented by any subsequent filings before summary judgment, provides the defendant fair notice that plaintiff is claiming relief under RLUIPA as well as the First Amendment.").

///

///

///

---

[1] Defendants, while stating that they are seeking dismissal of Plaintiff's First Amendment religious claims, offer no analysis with respect to this claim. Instead, their motion is focused entirely on Plaintiff's RLUIPA claims. Thus, Plaintiff's First Amendment Free Exercise Clause claims remain in this action.

While RLUIPA does not define what constitutes a "substantial burden" on religious exercise, the Ninth Circuit has defined the term according to its plain language. In *San Jose Christian College*, 360 F.3d at 1034, the Court looked to the "ordinary, contemporary, common meaning," to define the term by referring to dictionary definitions describing a "burden" as "something that is oppressive," and "substantial" as "'considerable in quantity' or 'significantly great.'" *Id.* Thus, a substantial burden on religious exercise must impose a "significantly great restriction or onus upon such exercise." *Id.*

Thus, the question is whether Plaintiff's has alleged facts to show that his religious beliefs were substantially burdened by the Defendants' actions. *See Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005) . Here, Plaintiff claims he was unable to celebrate Ramadan, an important component of his religious faith, due to the actions taken by the Defendants. These facts are sufficient to state a claim under RLUIPA. Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amendment and RLUIPA claims pursuant to FED.R.CIV.P. 12(b)(6) is **DENIED**.

### D. Fourteenth Amendment Equal Protection Claims

Defendants seek dismissal of Plaintiff's Fourteenth Amendment equal protection claims. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Shaw v. Reno*, 509 U.S. 630 (1993). Prisoners are protected by the Equal Protection Clause from intentional discrimination on the basis of their religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).

However, conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, unless they are supported by facts that may prove invidious discriminatory intent or purpose. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted).

"'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Here, Plaintiff's only claims are conclusory in that he makes generalizations that prison officials are "racially biased" but there no specific facts to show that any of the named Defendants acted with intentional discrimination. Accordingly, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment Equal Protection claims is **GRANTED**.

### E. Fifth and Fourteenth Amendment Due Process Claims

Defendants seek dismissal of Plaintiff's Fifth and Fourteenth Amendment due process claims.[2] The Due Process Clause prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. CONST. AMEND. XIV. The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).

/ / /

---

[2] Plaintiff claims due process violations under both the Fifth and Fourteenth Amendments. However, the Court will analyze Plaintiff's due process claims as arising under the Fourteenth Amendment. "Where an amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior,' it is that Amendment, that 'must be the guide for analyzing the complaint.'" *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)).

/ / /

Thus, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest is avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 221 (quoting *Sandin*, 515 U.S. at 484)  The *Sandin* test requires a case-by-case examination of both the conditions of the prisoner's confinement and the duration of the deprivation at issue. *Sandin*, 515 U.S. at 486.

Accordingly, under *Sandin*, the Court must determine whether Plaintiff has alleged facts sufficient to show that the ramifications of the eight days the prison was in lockdown "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  Here, Plaintiff alleges insufficient facts to show that the eight days he was confined to his cell while the entire prison was on lockdown was "atypical and significant." *Id.* Thus, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff Fifth and Fourteenth Amendment Due Process claims.

### F.     Qualified Immunity

Finally, Defendants seek dismissal of Plaintiff's Complaint on qualified immunity grounds.  Even if the Court finds that Plaintiff has sufficiently alleged a constitutional claim against Defendants, Defendants seek qualified immunity on the grounds that they "reasonably believed their actions were lawful."  (Defs. Mot. at 11-12.)   "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are:  (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right;  and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has recently held that "while the sequence set forth

there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*,__U.S. __, 129 S.Ct. 808, 818 (2009).

If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Similarly, if the Court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation. *Pearson*, 129 S.Ct. at 818.

In this case, the Court has found that Plaintiff has not sufficiently alleged a constitutional claim under the Fourteenth Amendment against Defendants and thus, need not decide whether these Defendants are entitled to qualified immunity as to those claims. *Saucier*, 522 U.S. at 201. However, the Court will address whether Defendants are entitled to qualified immunity for Plaintiff's RLUIPA and First Amendment claims.

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. This does not mean "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Instead, "in the light of pre-existing law[,] the unlawfulness must be apparent." *Id.* The "salient question" is whether the state of the law at the time gives officials "fair warning" that their conduct is unconstitutional. *Id.* at 740. "This inquiry ... must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 202; *Crowell v. City of Coeur D'Alene*, 339 F.3d 828, 846 (9th Cir. 2003).

In 2005, several years before the allegations in Plaintiff's First Amended Complaint took place, the Ninth Circuit decided *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). In *Warsoldier*, the Ninth Circuit held that if a prisoner is challenging a regulation as a violation of their rights under RLUIPA, the prison officials must actually have "considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Id.* at 999. Here, at this stage of the proceeding, there are no facts from which the Court could find that

Defendants considered something less restrictive than the lockdown they imposed which Plaintiff claims interfered with his religious practices. Thus, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint on qualified immunity grounds is **DENIED**.

### IV.   Conclusion and Order

For all the foregoing reasons, the Court hereby:

(1)   **DENIES** Plaintiff's Motion to Strike Defendants' Reply to Opposition [Doc. No. 26];

(2)   **GRANTS** Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) on Eleventh Amendment grounds, with prejudice, only to the extent that Plaintiff seeks damages against them in their official capacities;

(3)   **DENIES** Defendants' Motion to Dismiss Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) Plaintiff's First Amendment and RLUIPA claims;

(4)   **GRANTS** Defendants' Motion to Dismiss Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) Plaintiff's Fourteenth Amendment Equal Protection claims;

(5)   **GRANTS** Defendants' Motion to Dismiss Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) Plaintiff's Fifth and Fourteenth Amendment Due Process claims;

**IT IS FURTHER ORDERED THAT:**

Defendants Small and Madden shall file and serve their Answer to the First Amendment and RLUIPA claims that remain in Plaintiff's First Amended Complaint within fourteen (14) days of the date this Order is "Filed" pursuant to FED.R.CIV.P. 12(a)(4)(A).

**IT IS SO ORDERED.**

DATED: March 15, 2010

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. JAN M. ADLER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL